Allen, P.
Upon the trial of this ejectment, the controversy turned upon the construction of the description of the land contained in the grant under which the lessor of the defendant in error claimed. That grant is dated in 1803; the grant under which the plaintiff in error claimed, bears date on the 1st of March 1831. This action was commenced in 1839. If, therefore, the descriptive calls of the grant to the person under whom the defendant in error claims, embrace the land in controversy, judgment was properly rendered in his favor.
The grant to Moses Shepherd for one thousand four hundred and forty-one acres, under which the defendant in error claims, after setting out several lines and corners about which there was no dispute, and all of *530 which it was agreed by the parties in the agreement of facts filed, are correctly laid down and designated in the plat and report made out and returned in the cause by A. P. Woods, surveyor; called at the point Gr on said plat for a chestnut oak corner to Robert McCoy, about which or the fact of its being McCoy’s corner there is no controversy; both parties claiming and calling for it as McCoy’s corner in their respective grants. From this admitted corner of McCoy, Shepherd’s patent proceeds as follows: “ Thence with his line N. 75 E. 265 poles to a white oak corner to Samuel McConnell. Thence with his lines S. 16 E. 180 poles to a white oak, conceded to be at K on the diagram. This last line terminating at K is a line in the patent to McConnell called for in his grant as beginning at McConnell’s white oak corner admitted to be at letter I on the diagram, and running from the white oak at I, S. 16 E. 180 poles to the white oak at K. McConnell’s corner at I is distant 79 poles from the termination of McCoy’s line with which Shepherd calls to run, and at the end of which he calls for the white oak as a corner to Samuel McConnell: The corner of McConnell at I is nearly at right angles with the end of McCoy’s line. To reach the corner of McConnell at K, the next call of Shepherd’s grant, the line must be extended 79 poles; and instead of running with McConnell’s lines throughout the whole extent, it would run for 79 poles through land vacant at the time until it reached McConnell’s corner at I; and from I it would run with his line to K.
The defendant in error contends, that the true boundary of Shepherd’s grant was the line of McCoy’s grant, for the whole of which he called, and from the termination of the line, the correct boundary is to be ascertained by running nearly at right angles with McCoy’s liue to the first corner of McConnell at I, and continuing on the course called for with McConnell’s line from I to K.
*531 The plaintiff in error insists, that the true boundary of Shepherd’s grant is a straight line from the point Gr, called for as McCoy’s corner, the agreed point of departure, to McConnell’s white oak corner at Ij and thence with McConnell’s line as called for, S. 1G E. 180 poles, to the corner at K; thus departing entirely from McCoy’s line as called for by Shepherd, and materially changing the course and distance. The line in question, as called for both by McCoy and Shepherd, being N. 75 E. 265 poles, found on actual survey to be N. 77 E. 280 poles, a difference of two degrees in course and fifteen poles in distance. Whereas the straight line is found on actual survey to be N. 88 E. 305 poles; a valuation of thirteen degrees in course and an increase of forty poles in distance.
It is not controverted in argument, that where notorious land marks, as corner trees or natural objects, are called for, they are to be regarded as termini, and a straight line is to be run from one terminus to the other, without respect to course or distance. The case of Smith v. Davis, 4 Gratt. 50, recognizes this as a general rule. But though this be the true rule where no other call is found in the grant but the call to run from one terminus to another, there certainly may be other calls which show the line was not intended to be a straight line; as where a call is to run with a river or a public road from one terminus to another, the stream or road, if it leads to the other terminus, must be followed, though it may diverge from a direct line between the two points. The same rule would apply to a marked line, if there was enough to show that such line, though not a direct line, was intended as the boundary; provided by following the marked line the other terminus can be reached. The difficulty in this case grows out of the fact that by following the line of McCoy’s grant from the corner at Gr to the end thereof, as called for in Shepherd’s grant, though a *532 •white oak corner is found at the termination of the line of McCoy, it is not the white oak corner of S. McConnell, as called for. That corner is not found at the end of the McCoy line, or in the direction of it, but nearly at right angles with the end of said line and seventy-nine poles distant from it. If a direct line in legal construction, in the absence of proof of an actual survey on the ground, between the two termini is to be adopted, then the call to run with McCoy’s line throughout its whole extent must be rejected. But by following the line as called for to its .termination, and then running the next line by McConnell’s corner at I to the corner at K, the call for McConnell’s corner is reached, though not in the direct line as called for. It may be remarked, that there is no direct evidence in the record of any actual surveying on the ground when the original survey of Shepherd was made. And it is just as fair to presume he knew where McCoy’s line was as that he knew the position of McConnell’s corner. I think, indeed, it is the fair inference, deduced from the calls in the different surveys and the facts agreed, that he was much more likely to have known the position of the line than the corner. He was causing a survey to be made of waste and unappropriated land. He saw a large body of such land bounded in several places by the lines of previous grants. His survey calls to begin on a corner of Samuel Buchanan, and to run thence with his lines. It calls elsewhere for a corner of William Shepherd, and .to run with a line of his survey. It afterwards runs with two lines of McCoy, and with two lines of the McConnell grant. Seeing the body of land he was about locating and surveying was bounded to a considerable extent on the western, northern and eastern sides by older grants or surveys, it was natural he should call for them. The land was vacant along the lines called for; and as he adopts the lines of McCoy *533 where he runs with them throughout the whole distance, and precisely as they are found in McCoy’s grant, it is manifest he intended to appropriate the vacant land up to McCoy’s line, and to make his line the boundary of his tract on that side as far as it extended.
The land law, 1 Rev. Code 1819, p. 328, § 30, provides that the surveyor, at the time of making a survey, shall leave no open lines, but shall see the same plainly bounded by marked trees, except where a water course or ancient marked line shall be the boundary. It thus appears that the law regards an ancient marked line as sufficiently notorious to dispense with any further survey. It does not appear that the line of McCoy was marked. The corners, however, are found at each end, proving that it was actually run and probably marked ; and it is admitted to be McCoy’s line, and both parties call for it at the place designated in the plat. It is clear that McCoy’s survey was before Shepherd when his survey was made; and from calling for the cornel's at each end of the line, the reasonable presumption is that he knew where the line was, and intended to call for it as his northern boundary in this portion of the survey. McCoy’s line terminated at a white oak corner; and he called for a white oak, but by mistake supposing McConnell to corner on the same tree, and intending to run with two of his lines, he called for it as McConnell’s corner. There is no mistake as to the object called for, a white oak, or as to the position of the white oak at the termination of McCoy’s line. I think the object so called for must, in legal construction, be regarded as one of the land marks to which the party has a right to go, although he was mistaken in supposing it to be the corner of McConnell’s survey. The line called for was called for as the boundary, and the object at which it terminates limits its extent in that direction. It shows the distance to which the boun *534 dary extends in the direction of the line called for; and if McConnell’s corner be not found at the termination of the distance, yet by stopping at the distance called for and then running to the object and so by it to the next corner, effect is given in a measure to every call of the grant, and certainly much less violence is done to the calls than if that which is most material should be entirely disregarded. The case of Shultz v. Young, 3 Ired. R. 385, was similar in all its circumstances to the present. There the deed called to run south with A B’s line 310 poles to C D’s old corner. A B’s line did not reach the corner, but at the end of A B’s line it was necessary to run at right angles to reach C D’s corner. It was held that the line should be run 310 poles on A B’s line and then a straight line to C D’s old corner, as that best conformed to the description of the deed, though it was necessary to run two lines instead of the one callecl for.
The court was of opinion that there were manifest and strong reasons for believing that the line called for was well known to the parties : And so believing, determined that the call for the terminus should not overrule the rest of the description. It is equally manifest from the calls of this grant, that the locator here knew that the waste land he was appropriating was bounded in part by older surveys; that he knew the general position of these surveys and where the lines run; that the surveys were before him, and that he intended to adopt and did adopt the lines of such surveys where called for, precisely as they had been run originally, and to make them the boundaries of his survey. And these things being so, it seems to me the call for McCoy’s line cannot be rejected. I think therefore that the judgment of the Circuit court should be affirmed.
The other judges concurred.
Judgment affirmed.